# 22-2792-cv

## United States Court of Appeals

### *for the*

### Second Circuit

———————————————

STEVEN COOPER,

*Plaintiff-Appellant,*

— v. —

CITY OF NEW YORK, DANIEL O'CONNOR, POLICE LIEUTENANT THOMAS JACOBS, POLICE OFFICER JESSICA SCHRELL, Shield No. 26482, POLICE DPT SERGEANT BRENDAN RYAN, NY POLICE OFFICERS JOHN DOES 1-10, the identity of whom is presently unknown, in their individual and official capacities as New York City Police Officers, POLICE SERGEANT ADAM KATRINCIC, CAPTAIN DESMOND MORALES, POLICE OFFICER NICHOLAS HORUN, LT. TAX # 90962 STEVEN MONA, POLICE SERGEANT PEARL BARNHART,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## POLICE LIEUTENANT THOMAS JACOBS

JAMES M. MOSCHELLA
KARASYK & MOSCHELLA, LLP
*Attorneys for Defendant-Appellee*
  *Police Lieutenant Thomas Jacobs*
233 Broadway, Suite 2340
New York, New York 10279
(212) 233-3800

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ...................................................................1

ISSUES PRESENTED..................................................................................3

STATEMENT OF FACTS ...........................................................................3

    (i)     Introduction .................................................................................3

    (ii)    Cooper Assaults Jacobs .............................................................5

    (iii)   The NYPD Arrives......................................................................7

    (iv)   NYPD Investigation at the 90th Precinct .................................8

    (v)    Civil Law Suit ..........................................................................11

    (vi)   Second Amended Complaint ("SAC")...................................12

    (vii)  Proposed Second Amended Complaint ("PSAC") ...........12

STANDARD OF REVIEW AND SUMMARY OF THE ARGUMENT ..............15

ARGUMENT ............................................................................................17

    POINT I

    JACOBS WAS NOT ACTING UNDER THE COLOR OF LAW
    AND THE THREE PRIOR DECISIONS OF THE COURT
    BELOW ARE CORRECT IN DISMISSING ALL OF PLAINTIFF-
    APPELLANT'S CONSTITUTIONAL, FEDERAL, AND STATE
    LAW CLAIMS AGAINST JACOBS AS TO FALSE ARREST ................17

    I.    Defendant Jacobs was not acting under the color of law ...................17

    II.   There were no fact as to any false arrest claims pled regarding
         Jacob's in the PSAC ..........................................................................23

POINT II

THERE ARE NO GENUINE, MATERIAL FACTS OR
EVIDENCE TO SUPPORT PLAINTIFF-APPELLANT'S CLAIM
THAT DEFENDANT JACOBS CONSPIRED TO DEPRIVE
PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO BE FREE
OF ARREST ................................................................................................25

POINT III

THE COURT BELOW WAS CORRECT IN DECLINING TO
EXERCISE PENDENT JURISDICTION OVER THE
REMAINING STATE LAW CLAIMS..........................................................32

CONCLUSION ........................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Baker v. McCollan*,
  443 U.S. 137 (1979)......................................................................17

*Barna v. City of Perth Amboy*,
  42 F.3d 809 (3d Cir. 1994) .........................................................18

*Barnes v. Harling*,
  368 F. Supp. 3d 573 (W.D.N.Y 2019)..........................................26

*Benavidez v. Gunnell*,
  722 F.2d 615 (10th Cir. 1983) ............................................... 18, 22

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001)......................................................................18

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985)......................................................................17

*Claudio v. Sawyer,*
  675 F. Supp. 2d 403 (S.D.N.Y. 2009) ..........................................19

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
  648 F.2d 97 (2d Cir. 1981) ...........................................................26

*Cooper v. City of New York*,
  2018 U.S. Dist. LEXIS 170197 (E.D.N.Y.) .............................. 11, 15, 16, 20

*Cooper v. City of New York*,
  2019 U.S. Dist. LEXIS 131572 (E.D.N.Y.) ......................................... *passim*

*Cooper v. City of New York*,
  2022 U.S. Dist. LEXIS 173556 (E.D.N.Y.) ......................................... *passim*

*Cotz v. Mastoreni*,
  476 F. Supp. 2d 332 (S.D.N.Y. 2007) ..........................................20

*Eastway Const. Corp. v. City of New York*,
  762 F.2d 243 (2d Cir. 1985) .........................................................26

*Evans v. U.S.*,
  504 U.S. 255 (1992)......................................................................18

*Fiske v. Letterman,*
401 F. Supp. 2d 362 (S.D.N.Y. 2005) ...........................................................18

*Frost v. New York City Police Dep't,*
980 F.3d 204 (2d Cir. 2019) ........................................................................15

*Galapo v. City of New York,*
95 N.Y.2d 568 (2000)...................................................................................22

*Gomez v. Toledo,*
446 U.S. 635 (1980).....................................................................................17

*Griffin v. City of New York,*
880 F. Supp. 2d 384 (E.D.N.Y. 2012) ...........................................................22

*Jeffreys v. City of New York,*
426 F.3d 549 (2d Cir. 2005) ........................................................................29

*Jocks v. Tavernier,*
316 F.3d 134 (2d Cir. 2008) ........................................................................20

*Pangburn v. Culbertson,*
200 F.3d 65 (2d Cir. 1999) ..........................................................................26

*Panther Partners Inc. v. Ikanos Communications, Inc.,*
681 F.3d 114 (2d Cir. 2012) ................................................................ 15, 23

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.,*
712 F.3d 705 (2d Cir. 2013) ........................................................................32

*Pitchell v. Callan,*
13 F.3d 545 (2d Cir. 1994) ..........................................................................19

*Screws v. United States,*
325 U.S. 91 (1944)................................................................................ 18, 19

*Stoeckley v. City of New York,*
700 F. Supp. 2d 493 (S.D.N.Y. 2010) ...........................................................20

*United States v. Classic,*
313 U.S. 299 (1941).....................................................................................18

*United States v. Temple,*
447 F.3d 130 (2d Cir. 2006) ........................................................................18

*Wahhab v. City of New York,*
386 F. Supp. 2d 277 (2005) .........................................................................19

iv

**Statutes & Other Authorities:**

U.S. Const., Amend. IV ....................................................................29

U.S. Const., Amend. XIV ................................................................29

42 U.S.C. § 1983 ..................................................................... *passim*

Fed. R. Civ. P. 5 ..............................................................................26

Fed. R. Civ. P. 12(b)(6) ............................................................ 11, 23

## **PRELIMINARY STATEMENT**

This matter is before the Court because Plaintiff-Appellant Stephen Cooper ("Cooper") assaulted Defendant-Appellee Thomas Jacobs ("Jacobs") on a street in Brooklyn on March 20, 2016. Cooper, from the moment he became aware that Jacobs was an off-duty member of the New York City Police Department ("NYPD"), has attempted to shift his blame for assaulting Jacobs. Cooper has also attempted to blame the co-defendant-appellees, the NYPD who were on-duty and in uniform. The on-duty police officers responded to Cooper's false 911 report, that Jacobs and co-defendant Daniel O'Connor were attempting to rob him.

This matter is before the Court because Cooper will simply not take no for an answer, and accept that it was he who assaulted Jacobs and not the other way around. Cooper has persisted despite three (3) District Court decisions and orders that have found that Cooper has failed to establish any cognizable federal claims against Jacobs under 42 U.S.C. § 1983.

Cooper has now come to ask this Court to substitute its opinion and judgment in place of the three (3) prior District Court decisions and orders, even though Cooper has failed to present any evidence, law, or reason why this Court should do so. There has been no abuse of discretion, misinterpretation, or misapplication of the law by the courts below, that would justify disturbing the prior decisions and orders in this matter.

1

The uncontested facts have consistently shown that, at all relevant times, Jacobs was not acting under the color of law, a prerequisite for liability under Section 1983. Cooper has further made false and legally baseless assertions that Jacobs, along with the other Defendant-Appellees, conspired to violate his constitutional rights to be free of false arrest in violation of 42 U.S.C. § 1983. Cooper has not adduced any genuine evidence to support any of his assertions. The incontrovertible evidence in this matter shows that Jacobs, an off-duty New York City Police Officer, was assaulted by Cooper. It is uncontested that Jacobs, although employed as a New York City Police Officer, never acted in his capacity as a Police Officer during his interaction with Cooper. Moreover, Jacobs was never involved with the decision to arrest and criminally charge Cooper with assault. The decision to arrest and charge Cooper was based upon probable cause and that decision was made by defendant-appellee, on-duty NYPD Captain, Desmond Morales. In short, there are no disputed, material facts supporting any federal claims against Jacobs.

Upon the dismissal of the 42 U.S.C. § 1983 conspiracy claim, the sole Federal claim against Jacobs, Jacobs also requests this Court to affirm the order of the district court to decline to exercise supplemental jurisdiction over the two (2) state law claims of assault and battery.

## ISSUES PRESENTED

I.      Whether the District Court erred in finding that Defendant-Appellee Thomas Jacobs was not personally involved in the decision to arrest Plaintiff-Appellant Steven Cooper. Moreover, the existence of probable cause defeated any of Cooper's false arrest claims as to Jacobs and the co-defendants-appellees.

II.     Whether the District Court erred in finding that Defendant-Appellee Thomas Jacobs was not acting under the color of law. Cooper has failed to produce any evidence to the contrary that Jacobs was acting under the color of law during all relevant portions of the incident in question and prior to identifying himself to responding officers.

III.    Whether the District Court erred in finding that there was no Section 1983 conspiracy to falsely arrest Cooper. The Court correctly found that the existence of probable cause defeat any conspiracy claim. Moreover, there was no evidence to show a meeting of the minds to enter into a conspiracy.

## STATEMENT OF FACTS[1]

**(i) Introduction:**

On March 20, 2016, at approximately 4:00 p.m., Plaintiff-Appellant, Steven Cooper ("Cooper"), was walking across the street in Brooklyn, New York,

---

[1] Unless otherwise noted, the following facts are taken from Defendant-Appellee Thomas Jacobs' Rule 56.1 Statements, JA 1132-1142; and Defendant-Appellee Jacobs' Reply Responses to Plaintiff's Rule 56.1 Counter Statements of undisputed facts, JA 1161-1192.

at the intersection of Roebling Street and Broadway when he encountered a motor vehicle exiting the Williamsburg Bridge. Defendant-Appellee Thomas Jacobs ("Jacobs") was seated in the rear passenger seat of that vehicle. With him were three other passengers, defendant Daniel O'Connor (O'Connor), Steven Mona ("Mona"), and Vasilis Xydias ("Bill X"). At the time, Jacobs was employed as a New York City Police Officer holding the rank of Lieutenant, and assigned to the 114th Precinct in Astoria, Queens. Jacobs was on his regular day off and was wearing civilian clothing on the date of the incident. JA 1133; 1162-1163.

As the car traversed the intersection of Roebling Street and Broadway, Cooper believed the driver had disregarded the stop sign. Incensed, Cooper aggressively motioned toward the stop sign, yelled at the occupants of the vehicle, and slapped the rear hood of the vehicle. Defendant O'Connor, who was seated in the front passenger seat, believed that Cooper had thrown something at the vehicle. O'Connor exited the vehicle. Jacobs, aware that an argument between Cooper and O'Connor might ensue, exited the vehicle a few seconds after O'Connor. JA 1163-1165.

Jacobs observed O'Connor approaching Cooper, who was standing in the roadway. O'Connor grabbed the hood of the sweatshirt that Cooper was wearing. Cooper and O'Connor proceeded to argue. In an attempt to defuse any argument, Jacobs stepped in between Cooper and O'Connor. Jacobs pushed O'Connor back

away from Cooper, and pushed Cooper back away from O'Connor. Cooper,

remaining hostile and aggressive, continued to yell at O'Connor. JA 1165-1167.

**(ii) Cooper Assaults Jacobs:**

When Jacobs turned his head back to O'Connor, Cooper punched Jacobs on

the right side of his face with his left hand. Jacobs' eyeglasses were knocked off of

his face and to the ground where they broke in three pieces. After punching Jacobs,

Cooper ran away. This entire encounter is on video and was submitted to the court

below as Exhibit "E" to Defendant-Appellee Thomas Jacobs' Rule 56.1 Statement

in support of his summary judgment motion and is part of the herein Joint Appendix,

at JA 1143; JA 1171-1175.

Although disoriented after receiving a painful punch to the face, Jacobs

observed O'Connor following Cooper. As Cooper ran away, his hat fell off his head.

Jacobs began to run in the direction of O'Connor and Cooper but fell when he

attempted to pick up Cooper's hat off the sidewalk. Jacobs injured his knee on the

sidewalk. As Jacobs got up, he observed O'Connor pursuing Cooper approximately

forty (40) feet in front of him. In frustration over just being assaulted by Cooper,

Jacobs threw Cooper's hat into a nearby construction site. JA 1173-1175.

Cooper ran around the corner of Havemeyer Street and Broadway and out of

Jacobs' sight. O'Connor looked for Cooper in both a bank and a bodega. Jacobs

accompanied him and repeatedly attempted to advise O'Connor to stop searching

and return to the vehicle. Jacobs, who could not see well without his glasses, gave up arguing with O'Connor and began to walk back to the site of the original incident location. Jacobs was intending to retrieve his glasses which Cooper had knocked off of his face when he punched Jacobs. JA 1175-1176.

At this time, Cooper, on his mobile phone, called 911. Jacobs, who was at all times approximately twenty feet away from Cooper, observed O'Connor leaning over Cooper. Jacobs could hear both Cooper and O'Connor yelling. Jacobs also heard Cooper yell "they're punching me, they're punching me." Jacobs, still remaining approximately twenty feet away from Cooper, replied "nobody's punching you, you just fucking punched me." Jacobs was now joined by the two other passengers from the vehicle, Mona, and Bill X. They were soon joined by O'Connor. The four began walking back towards the original incident scene to retrieve Jacobs' glasses. Jacobs found them broken in three pieces and in the roadway. JA 1177-1178.

At no time during the incident did defendant Jacobs take any "police action". Jacobs did not identify himself as an officer during the incident. Jacobs did not handcuff Cooper or display handcuffs to Cooper. Jacobs did not tell Cooper he was under arrest, nor did Jacobs arrest Cooper. Jacobs did not call 911 or the Precinct. Jacobs did not display any police shield to Cooper, nor did he display any weapons

to Cooper. Jacobs was not wearing a police uniform at the time of the incident. JA 1167-1171.

While on the phone with the 911 operator, Cooper was instructed to return to the original incident location. As Cooper walked, keeping approximately a block's distance from O'Connor, he observed a marked police vehicle approaching him on Roebling Street. Cooper approached the vehicle and the two officers, Officer Schrell and Officer Horun, who told him to get in the police vehicle. The officers and Cooper returned to the original incident location where two other marked police vehicles had also responded. At the same time, Jacobs, O'Connor, Mona, and Bill X walked back in the direction of the vehicle after retrieving Jacobs' broken glasses. They turned the corner onto Roebling Street. At that point a marked NYPD vehicle, with lights and sirens activated, approached them and the uniformed Police Officer told them to stop. JA 1178

**(iii) The NYPD Arrives:**

Plaintiff Cooper was seated in the back seat of the police vehicle. One officer exited the vehicle and approached the men. Defendant Jacobs then presented the Police Officer with his NYPD ID card as he is required to do under NYPD rules and regulations. Jacobs told the Police Officer that he had been assaulted and that the male in the back of their vehicle was the person who assaulted him. Cooper did observe Jacobs identifying himself to the Police Officer that exited the vehicle. This

7

was the first point at which Cooper believed that Jacobs was a New York City Police Officer. Cooper did not know Jacobs was a New York City Police Officer until he saw him identify himself to the Police Officers after the incident had concluded and at the same time Jacobs identified Cooper as the individual who had just assaulted him. Cooper, having realized that Jacobs was a police officer, provided the officers with his license and phone number but told the officers that he wanted to go home and tend to his injuries. That was the last time that Cooper saw Jacobs. 1179-1182.

**(iv) NYPD Investigation at the 90th Precinct:**

Cooper was then informed that he was not arrested, but he would have to go back to the 90th Precinct because an officer had been involved in the incident and Cooper would have to speak to the Internal Affairs Bureau ("IAB"). Cooper was then driven in a police vehicle to the 90th Precinct. Defendant Jacobs was also informed by defendant Sergeant Katrincic that he was required to go to the 90th Precinct since he had been involved in an off-duty incident. JA 1182-1183.

Upon arrival at the 90th Precinct, Jacobs was escorted to the Community Affairs office. Feeling dizzy and nauseous as a result of Cooper punching him in the head earlier, Jacobs proceeded to vomit. Within the first twenty minutes of his arrival, Jacobs was triaged by FDNY EMS. Jacobs refused medical treatment. Jacobs complained of a headache and nausea. During his time in the Community Affairs office, Jacobs was alone in the office, with the exception of a brief

conversation with Duty Captain Desmond Morales, and later, a meeting with his union representative.  During his time in the Community Affairs office, Duty Captain Morales informed Jacobs that Cooper was making allegations against Jacobs. Jacobs was told he was going to be interviewed. Jacobs was formally interviewed by members of the NYPD Brooklyn North Investigations Unit. Jacobs was determined to be the victim of an assault by Duty Captain Morales and the NYPD Brooklyn North Investigations Unit. Jacobs left from the 90th Precinct at approximately 12:00 a.m. JA 1184-1185.

Plaintiff Cooper, while at the 90th Precinct, informed a Sergeant that he wanted to press charges against O'Connor. He was then informed that charges were also being pressed against him. Duty Captain Morales ordered the arrest of Cooper for assaulting Jacobs. Defendant Jacobs did not make any determination as to who was to be arrested. Defendant Jacobs did not conduct any part of the investigation of the incident. Defendant Jacobs did not arrest Cooper. Defendant Jacobs did not process Cooper's arrest. JA 1186-1189.

Cooper was escorted to a cell at approximately 9:00 p.m. While at the precinct, Cooper was offered an ice pack by an EMT who was in the Precinct on another call. Cooper received no other medical treatment while there.  Cooper was released from the 90th Precinct at approximately 2:00 a.m. Cooper was issued a Desk Appearance Ticket ("DAT") for his assault upon Jacobs. Cooper was arraigned by the Kings

County District Attorney's Office on April 25, 2016 on charges of Assault in the Third Degree, Menacing in the Third Degree, and Harassment in the Second degree. The charges against Cooper were later dismissed on June 20, 2016. JA 1189-1192.

O'Connor was charged with assault upon Cooper, however due to a prior outstanding bench warrant, he was not eligible for a DAT and appeared before a New York City Criminal Court Judge the next day. O'Connor ultimately pled guilty to the charge of Disorderly Conduct to resolve all charges stemming from the incident with Cooper. JA 1188-1192.

Jacobs was disciplined by the New York City Police Department for wrongfully engaging in an off-duty dispute. Jacobs' as part of the internal NYPD investigation, admitted to throwing Cooper's hat into a construction site; to not calling the patrol supervisor; and to pushing Cooper when attempting to separate Cooper from O'Connor in violation of the NYPD proscription of engaging in conduct prejudicial to the good order and efficiency of the Police Department. He forfeited fifteen (15) vacation days, JA 1153-1156. He was never charged with any misconduct regarding Cooper's arrest or any misconduct in relation to Section 1983 claims, as to false arrest or conspiracy to violate Cooper's constitutional right to be free of false arrest. JA 1188-1192.

**(v) Civil Law Suit:**

Cooper filed his original complaint on March 17, 2017, and thereafter filed a First Amended Complaint (FAC) on June 30, 2017. JA 0001-JA0029, FAC JA0025-JA0062.

Jacobs, O'Connor and the City Defendant-Appellee's filed separate motions to dismiss the FAC for failure to state a claim under Rule 12(b)(6) of the Fed. R. Civ. P.. On September 29, 2018, the Court granted all defendants' motions to dismiss, and the case was marked "closed", however, without prejudice to the plaintiff. As it related to defendant Jacobs, the Court held in relevant part "[h]ere while Plaintiff [Cooper] alleges that Jacobs 'was acting under the color of state law' and 'in his capacity as a police officer' Plaintiff Cooper (or the FAC) fails to set forth any facts that render this assertion as plausible." *Cooper v. City of New York*, 2018 U.S. Dist. LEXIS 170197 *18 (E.D.N.Y.) JA0091-0114 (hereinafter "Cooper I").

District Court Judge Garaufis further found that Cooper did not become aware of the fact Jacobs was a law enforcement officer until after the time he assaulted Jacobs. (Cooper I * 20-21). Moreover, the Court found there was probable cause for Cooper's arrest and dismissed the §1983 false arrest claims against all defendants including Jacobs. *Id* *22

11

**(vi) Second Amended Complaint ("SAC"):**

Plaintiff filed a Second Amended Complaint ("SAC") on November 28, 2018, and a subsequent motion to amend the SAC on December 4, 2018 (see, SAC (Dkt. 63); Letter Motion to Amend Complaint. (Dkt. 64). At a pre-motion conference on January 17, 2019, Plaintiff requested to withdraw his previously filed proposed SAC. The Court granted Plaintiff's request to withdraw his previously proposed SAC and granted plaintiff leave to file a motion to amend.

**(vii) Proposed Second Amended Complaint ("PSAC"):**

Plaintiff filed his motion to amend and a new Proposed Second Amended Complaint (PSAC) on February 1, 2019 (he refiled them on February 4, 2019). JA 0118-0155.

Appellees Jacobs, O'Connor and the City Defendants-Appellees filed separate oppositions to plaintiff's motions. In sum, their arguments were that PSAC failed to cure the deficiencies in the FAC, and the amendments would be futile because the PSAC cannot survive a motion to dismiss.

The Court in its Memorandum and Order, dated August 5, 2019, attempted to discern the plaintiff's claims and as to which defendants the Cooper's claims applied to. The court created a chart to link the alleged defendants to the alleged claims (*see*, *Cooper v. City of New York*, 2019 U.S. Dist. LEXIS 131572 *11 [TABLE 1] (E.D.N.Y.) (hereinafter "Cooper II") JA 0156-0197. The Court noted plaintiff's lack

of clarity regarding the defendants and the claims. At Cooper II footnote 3 at *11, JA 0162-0163, the Court stated: "With the exceptions of the state law assault and battery claims, Plaintiff Cooper does not make explicit against which defendants each claim is asserted. Defendants' names inside parentheses (on the chart) thus reflects the court's best guesses based upon the description of each claim."

As to Jacobs, the court below linked him to the following claims: (1) 42 U.S.C. § 1983 False Imprisonment; (2) 42 U.S.C. § 1983 False Arrest; (3) 42 U.S.C. § 1983 Malicious Prosecution; (4) Deprivation of Rights under 42 U.S.C. § 1983; (5) Excessive Force under 42 U.S.C. § 1983; (6) Conspiracy to Deprive Plaintiff of his Constitutional Rights under 42 U.S.C. § 1983. The Pendant Jurisdiction claims against Jacobs were (1) Assault; (2) Battery; (3) Prima Facia Tort (including all Defendants); (4) New York State Constitutional Violations; (5) False Arrest; (6) Malicious Prosecution; (7) Intentional Infliction of Emotional Distress (including all Defendants); (8) Negligent Infliction of Emotional Distress (including all defendants); and (9) Larceny. (*11 Table 1 JA 0162-0163)

Regarding Jacobs, the court below found in sum that: 1) the PSAC contained no facts he participated in any alleged § 1983 violations; 2) that there was a lack of personal involvement; 3) an insufficiency of the pleadings or no rational fact finder could determine that Jacobs was acting under the color of law prior to the time he displayed his identification. The court below dismissed all 42 U.S.C. § 1983 Federal

Claims as plead against Jacobs except for the section 1983 Conspiracy claim. The court below found "that these allegations, [conspiracy] while limited, are sufficient to raise a plausible inference of a conspiracy to violate Plaintiff's right to be free from false arrest." Cooper II at *34.

As to the Pendant Jurisdiction claims, the Court only permitted Assault and Battery claims to survive and dismissed all other state claims against Jacobs.

On August 12, 2019, Plaintiff filed his SAC in accordance with Judge Garaufis' Memorandum and Order. The parties conducted depositions and at the conclusion of discovery the Defendant-Appellees filed their motion for summary judgment.

On July 21, 2021 Jacobs filed his motion for summary judgment including our reply. JA 1129-1192.

District Court Judge Kovner issued a Memorandum and Order on September 26, 2022, granting all defendants summary judgment motions as to the surviving claims. Judge Kovner found the existence of probable cause for all three of Cooper's false arrest claims and that the existence of probable cause resolved the § 1983 conspiracy claims. Additionally, the court below found there was a lack of evidence of any meeting of the minds to support any claim that the defendants including Jacobs conspired to fabricate evidence to lead to Coopers arrest. *(see, Cooper v. City*

*of New York*, 2022 U.S. Dist. LEXIS 173556 (E.D.N.Y.) (hereinafter, "Cooper III")

JA 1193-1208.

## STANDARD OF REVIEW AND SUMMARY OF THE ARGUMENT

Cooper has correctly stated this Court reviews the District Court's denial of leave to amend based on an interpretation of the law *de novo*. "We review a District Courts denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Communications, Inc.* 681 F. 3d 114, 119 (2d Cir. 2012). And this Court also reviews a District Court's summary judgment order *de novo* and the focus is on whether the District Court correctly concluded that there was no genuine dispute as to any material fact and that the moving party was entitled to judgment as a matter of law. (*see*, *Frost v. New York City Police Dep't,* 980 F. 3d 204, 207 (2d Cir. 2019)).

The District Court in two separate Orders found correctly that:

First, Jacobs was not at any relevant time acting under the color of law concerning his encounter with Cooper and therefore all constitutional, federal claims as to Jacobs were properly dismissed in Cooper I.

Second, the District Court did not misinterpret or misapply the law when it found that Cooper failed to state any facts as to Jacobs with respect to his false arrest claims and refused to allow any amendment as to the false arrest claim. Moreover,

Cooper's failure to state any facts as to Jacobs and his false arrest claim essentially denies this Court of any jurisdiction concerning that claim. How could the court below have misinterpreted or misapplied the law when there was nothing to apply the law to?

Third, the District Court below finding in Cooper III as to probable cause existing in Cooper's arrest resolved all potential false arrest claims. Therefore, the findings in Cooper I that Jacobs had no personal involvement in Cooper's arrest should be affirmed. In Cooper II, the Court also properly found there were no fact stated as to any claim of Jacobs and false arrest. And in Cooper II, the court below meticulously analyzed the almost indiscernible PSAC, and by permitting certain false arrest claims to be plead in the Second Amended Complaint clearly showed its determination as to Jacobs and false arrest were not an abuse of discretion, misinterpretation, or misapplication of the law.

Fourth, the District Court fully considers the record presented in Jacobs motion for summary judgment and correctly found there was no evidence of the meeting of the minds by Jacobs and the herein co-defendant-appellees to enter into a conspiracy to falsely arrest Cooper.

## **ARGUMENT**

## **POINT I**

## **JACOBS WAS NOT ACTING UNDER THE COLOR OF LAW AND THE THREE PRIOR DECISIONS OF THE COURT BELOW ARE CORRECT IN DISMISSING ALL OF PLAINTIFF-APPELLANT'S CONSTITUTIONAL, FEDERAL, AND STATE LAW CLAIMS AGAINST JACOBS AS TO FALSE ARREST**

I.     <u>Defendant Jacobs was not acting under the color of law.</u>

42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constriction and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983, by its own terms, does not create any substantive rights; it provides only remedies for deprivation of rights established elsewhere in the Constitution or under federal law. *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).  In order to establish a cognizable section 1983 claim, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law.  *See* 42 U.S.C. section 1983; *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

17

An individual acts under the color of law when he or she exercises power "made possible only because [he or she] is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). *See also Evans v. U.S.*, 504 U.S. 255, 274 (1992); *Screws v. United States*, 325 U.S. 91, 107-113 (1944). "Color of law and pretense of law are synonymous, and acts of officers engaged in 'personal pursuits' are not included." *United States v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006); *see Screws*, 325 U.S. at 111. As aptly stated by the Third Circuit in *Barna v. City of Perth Amboy*, "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." 42 F.3d 809, 816 (3d Cir. 1994).

Where the defendant is a private entity, the plaintiff must show that there is "such a close nexus between the State and the challenged action" that seemingly private behavior "may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). "Communications between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fiske v. Letterman,* 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005). *See also*, *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which

renders a private citizen liable under §1983."). Plaintiff has not made that showing here.

In the context of off-duty police officers, "it is now axiomatic that 'under "color" of law means under "pretense" of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded." *Pitchell v. Callan*, 13 F.3d 545, 547-48 (2d Cir. 1994) (quoting *Screws*, 325 U.S. at 111). While there is "no bright line test for distinguishing 'personal pursuits' from activities taken under color of law," in general "[c]ourts look to the nature of the officer's act, not simply his duty status." *Id.* at 548. The relevant question is whether the officer, "albeit off-duty, nonetheless invokes the real or apparent power of the police department" or "performs duties prescribed generally for police officers." *Id.* at 548.

When assessing whether an off-duty police officer is acting under color of the law, courts look to the totality of the circumstances. The factors that they consider are: (1) whether the officer identified himself <u>during</u> the incident as a police officer; (2) if plaintiff was aware that defendant was a police officer; (3) whether the defendant off-duty officer detained/questioned the plaintiff in the scope of their job as a police officer; and (4) whether defendants engaged in any investigation aspect of the public safety functions of police work. *Claudio v. Sawyer,* 675 F. Supp. 2d 403 (S.D.N.Y. 2009) (quoting *Wahhab v. City of New York*, 386 F. Supp. 2d 277, 278 (2005)). Courts also consider whether the officer was in uniform; was authorized

19

to make an arrest at the time; was carrying handcuffs; was carrying any weapons; flashed a police badge; and placed the plaintiff under arrest or otherwise detained him. *Cotz v. Mastoreni*, 476 F. Supp. 2d 332, 372 (S.D.N.Y. 2007) (citations omitted).

In many of the cases that the off-duty officer was found to be acting under color of the law, it was due in part to the fact that the officer identified themselves before taking action. *See Jocks v. Tavernier*, 316 F.3d 134 (2d Cir. 2008). Conversely, the district courts have found that an off-duty officer was not acting under the color of law during an altercation because he did not identify himself as an officer until the police responded, much like in the present case. In *Stoeckley v. City of New York*, 700 F. Supp. 2d 493 (S.D.N.Y. 2010), the District Court stated, "[t]here is no allegation that Velasquez was in uniform, that he was on duty, or that he exhibited a badge or identified himself as a police officer during the entire course of the incident. To the contrary, the complaint suggests strongly that the first plaintiffs learned that Velasquez was a police officer was after the incident had concluded and the officers who responded to the 911 call came out of the grocery store." The undisputed fact that Jacobs did not identify himself until after the altercation only detracted from plaintiff's bald assertion that Jacobs was acting under color of law. (*see*, *Cooper I *18-21; Cooper II *25-28*).

20

While the plaintiff makes the bald assertion that defendant Jacobs was "acting under color of state law," or "under the supervision of NYPD and according to their official duties," he sets forth no genuine material facts to render this assertion as either plausible or cognizable.

In Cooper II, Judge Garaufis found no facts offered by Cooper could render plausible the assertion that Jacobs was acting under the color of state law. He further found no rational finder of fact could determine that [Jacobs] was acting under the color of state law prior to the time he displayed his badge and identified himself as a police officer after he was assaulted by Cooper (*see*, *Cooper II \*27*). Plaintiff-Appellant Cooper has consistently failed to produce any evidence despite the full discovery process, to disturb this holding or to show any abuse of discretion by the courts below in making this key finding.

In his deposition, Cooper is also clear that defendant Jacobs did not take any police action during the incident. Jacobs did not identify himself as a police officer, Jacobs did not display handcuffs to Cooper nor display a police shield to him, nor did he place Cooper under arrest. Further, Jacobs was not wearing a police uniform when the incident occurred, he did not display a firearm and at no point did Jacobs detain or question Cooper. (Rule 56.1 Statement at ¶ 18-25, JA 1135 ¶ 75-89 JA 1140-1142).   It is clear that Jacobs' involvement was not in the course of, or colored by, his occupation as a Police Lieutenant.

21

Moreover, Jacobs is even further removed from liability because he was not even the party who called the police. It was Cooper who called 911 to report the incident. Even if Jacobs provided information to the police, his mere "furnishing of information to the police officers does not constitute joint action under color of state law which renders private citizen liable under § 1983." See *Benavidez*, 722 F.2d at 618. Thus, Cooper's assertion that Jacobs identified himself to the police officers and recounted the incident to them is not sufficient enough to set forth a viable § 1983 claim against Jacobs.

Jacobs was administratively/internally disciplined by his employer, the NYPD. The investigation by the NYPD Internal Affairs Bureau ("IAB"), based upon allegations Cooper made, were Patrol Guide violations and there was no finding by the NYPD that Jacobs was improperly involved in the arrest of Cooper. Police Officers on and off-duty are bound by the provisions of the Patrol Guide. The Patrol Guide is an internal training manual of nearly 1,500 printed pages containing thousands of rules, procedures and policies adopted by the Police Commissioner for the governance, discipline, administration, and guidance of the Police Department. The Patrol Guide is intended to provide additional guidance on the most common practices of the Department and serve as performance expectations. *See Galapo v. City of New York*, 95 N.Y.2d 568, 574-75 (2000); *Griffin v. City of New York*, 880 F.Supp.2d 384 (E.D.N.Y. 2012).

The three administrative disciplinary charges and specifications clearly implicate the findings of violations of the NYPD internal code of conduct and are not findings that Jacobs violated Cooper's constitutional civil rights or can be relied upon as collateral evidence.

Jacobs admitted that he should not have interceded in breaking up Cooper and O'Connor; he should have immediately contacted a supervisor to inform them that he was involved in an off-duty event, and he should have safeguarded Cooper's hat instead of discarding it on a construction site. There was no finding that Cooper's arrest was improper or that Jacobs was not assaulted by Cooper. Clearly, despite the lengthy and exhaustive IAB investigation, Jacobs was the victim of an assault by Cooper and not the other way around as Cooper attempts to allege.

II.    There were no fact as to any false arrest claims pled regarding Jacob's in the PSAC.

There was no abuse of discretion or a misinterpretation or misapplication of the law when the court below in Cooper II found with respect to Jacobs that the PSAC contained no facts that Jacobs participated in the alleged false arrest... and Cooper had failed to state a claim. The Court held the PSAC is futile to the extent it attempts to assert such a claim. Cooper II *19

Futility is a determination, as a matter of law, that the proposed amendments would fail to cure prior deficiencies as to state a claim under Rule 12(b)(6). *See*, *Panther Partners Inc. v. Ikanos Communs. Inc.,* 681 F 3d 114, 119.

In Cooper II, that court below did however allow Cooper to pursue his narrow but limited inference that there may be a conspiracy between Jacobs in the City Defendant-Appellee. This conclusion cuts against an abuse of discretion or a misinterpretation or application of the law.

It must be noted that the court below in Cooper II found that Cooper failed to state any facts with respect to Jacobs in his PSAC. Therefore, under the *de novo* standard of review Cooper has failed to show what if any misinterpretation or misapplication of the law the Court has engaged in. We know the court hand-crafted a Chart based upon "its best guesses" as to what Cooper was attempting to plea in his PSAC. How can this be a misinterpretation or misapplication of the law as it applies to Cooper's false arrest claim?

Moreover, there was no abuse of discretion by the district court below in Cooper III in finding Cooper's arrest was grounded in probable cause, thus defeating all the false arrest and false-imprisonment claims that survived and were allowed in the Second Amended Complaint as to the Co-Defendant-Appellees.

Accordingly, to the Orders and decisions of all courts below should be affirmed.

24

## POINT II

## THERE ARE NO GENUINE, MATERIAL FACTS OR EVIDENCE TO SUPPORT PLAINTIFF-APPELLANT'S CLAIM THAT DEFENDANT JACOBS CONSPIRED TO DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO BE FREE OF ARREST

While it is clear that defendant Jacobs was not acting under the color of law, Cooper makes the false and baseless assertions that Jacobs, along with defendants Schrell, Horun, Katrincic, Morales, Barnhart, the John Doe Police Officers, Mona, and O'Connor conspired to violate his constitutional rights in violation of 42 U.S.C § 1983 (Sec. Amend. Compl. ¶¶ 47-51, JA 0127-0128 ¶¶ 91-97, JA 0137-0139).

The court below in Cooper II stated the following regarding the conspiracy claim in the context of allowing Cooper to pursue these claims in his Second Amended Complaint:

> "The Court finds that these allegations, while limited, are sufficient to raise a plausible inference of a conspiracy to violate [Cooper's] right to be free from false arrest" *Id.* *34.

This alleged very limited conspiracy claim by Cooper was the only Federal § 1983 cause of action that survived against Jacobs. This very narrow and limited inference that there may be a conspiracy between Jacobs and the City Defendant-Appellees is the central core of Cooper's case which Cooper has failed to prove.

To prevail on a conspiracy claim under § 1983, the plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act

25

done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[W]here a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may ... grant summary judgment." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 251 (2d Cir. 1985) (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981), *superseded on other grounds by* Fed. R. Civ. P. 5. *See also Barnes v. Harling*, 368 F.Supp.3d 573 (W.D.N.Y 2019)).

Cooper has set forth no genuine, material facts or evidence to state a viable conspiracy claim against Jacobs under § 1983. In his Second Amended Complaint, Cooper makes the bald assertion that after he decided to press charges, Jacobs, and the other named Police Officers, "reached an agreement amongst themselves to retaliate against Cooper by framing him for a series of crimes he never committed to thereby deprive Cooper of his constitutional rights." (Sec. Amend. Compl. ¶ 91 JA 0137). Cooper asserted that "in furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in join activity." (Sec. Amend. Compl. ¶ 94 JA 0138). While "such conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct evidence," Cooper does not even proffer circumstantial evidence to create any factual issues on this claim. *See*, e.g., *Pangburn*, 200 F.3d at 72.

26

Cooper's argument is simply that because Jacobs was an off-duty Police Officer, there must be some conspiracy between him and the on-duty officers. That is insufficient to create a triable issue of fact. The pleadings and the evidence do not present any facts tending to show agreement and concerted action between Jacobs and the New York City Police Department, nor that Cooper called 911 to report a robbery, which the responding officers found to be false. Jacobs did not have any involvement in determining whether to issue a Desk Appearance Ticket to Cooper. In Cooper's SAC, he claims he was arrested by Schrell, Horun, Katrincic, Morales, Barnhart and the John Doe Police Officers, making no mention that Jacobs was involved in this process. (Sec. Amend. Compl. ¶ 85 JA 0136). Further, the evidence clearly reflects that Jacobs had no involvement with any part of Cooper's arrest. Jacobs did not make any determination as to who would be arrested, he did not conduct any part of the investigation, he did not arrest Cooper himself nor process Cooper's arrest. (Rule 56.1 Statement at ¶¶ 68-72 JA 1139-1140; JA 1184-1187). Jacobs, moreover, simply complied with the investigation and told the Duty Captain what happened, "he was punched in the face by Cooper" which is corroborated by video of the incident.

Further, the video of the incident plainly shows Cooper punching Jacobs in the face and running away. Thus, not only is there no evidence of a conspiracy, but visible probable cause existed for Cooper's arrest for assault. Cooper's tenuous

contention that he was arrested based solely on a conspiracy for which he has offered no concrete evidence boldly ignores that there was irrefutable evidence that he committed an assault against Jacobs. (see, Exhibit "E" JA 1143)

Duty Captain Morales' testimony was also uncontested that it was he who determined Cooper was to be arrested for his criminal assault upon Jacobs. There was absolutely no involvement by Jacobs in the decision to arrest Cooper. At no point in time did Jacobs conspire with members of the NYPD to falsely arrest Cooper. As the evidence clearly demonstrates, it was Cooper that assaulted Jacobs at the intersection of Broadway and Roebling Street. The video of the incident speaks for itself and corroborates the uncontroverted evidence given in this case.

However, despite the benefit of extensive discovery and the sworn depositions of all Defendant-Appellees, Cooper's conspiracy claims remained unsupported by evidence and remain purely speculative at best.

In Cooper III, Judge Kovner in granting summary judgment to all Defendant-Appellee's with respect to Cooper's federal claims found there was probable cause for the arrest of Cooper. The court below found the evidence of probable cause was a complete defense to Cooper's claims of false arrest and false imprisonment under both New York state and federal law. Jacobs simply told the arresting officer and Captain Morales that he got punched in the face by Cooper, trying to break up a fight. The report of a putative victim, as Jacob's was established the necessary

probable cause required to arrest and detain Cooper. Cooper failed to point to any circumstances that rendered it unreasonable for the arresting officer to rely on the account of the putative victims (Cooper III *11).

In finding the existence of probable cause, Judge Kovner, in her examination of the record, found Cooper did not identify any evidence that the defendants deliberately disregard[ed] known facts in making their probable cause determination. Cooper further failed to establish that circumstances raised doubt as to Jacobs veracity. Cooper, as he is again doing here, was asking the court to disregard the [on-duty uniformed] officers' and Lt. Jacobs' [off-duty not uniformed] testimony about what was discussed at the scene. The court found that Cooper's request to disregard their testimony failed to meet the stringent standard that a district court may only disregard testimony when the testimony is so 'replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit [it].' *Jeffreys v. City of New York*, 426 F. 3d 549, 555 (2nd Cir. 2005) *Id.* *13.

The court below turned to the alleged conspiracy to arrest Cooper in violation of his Fourth and Fourteenth Amendment rights to be free of false arrest. The court found in addition to the existence of probable cause there was also an absence of any evidence of a meeting of the mind that such an agreement could exist here. *Id.* *17.

The court's analysis as to the allegation of a conspiracy found that these claims by Cooper were either unsupported by the record or failed to support any inference of a conspiracy that could survive the motion for summary judgment. Cooper, despite two prior attempts to bring a cognizable claim and an almost handwritten road map by the court in Cooper II by way of a Chart, again failed to produce evidence to support his baseless allegations despite a full blown discovery process.

The district court examined five arguments put forward by Cooper to support a conspiracy could be inferred as to Jacobs:

First, "Jacobs attacked Cooper". This assertion belied the record. It was determined by the NYPD Duty Captain Morales that Cooper attacked and assaulted Jacobs and the fact Captain Morales left Coopers false allegations out of his investigative report does not support a conspiracy to fabricate evidence.

Second, "Cooper's injuries were wrongly attributed to O'Connor instead of Jacobs". Here the court found that at least seven witnesses were interviewed that stated Jacobs did not strike Cooper, but it was O'Connor. Captain Morales' investigation lead to the undisputed conclusion that Cooper was assaulted by O'Connor.

Cooper failed to raise any genuine dispute regarding the sufficiency of Captain Morales investigation, and therefore no reasonable jury could infer a

conspiracy. Additionally, there is no evidence in the record that O'Connor disputed this conclusion that resulted in him being changed in criminal court for an assault upon Cooper. Cooper also subsequently fully cooperated with the NYPD internal disciplinary investigation of Jacobs. That investigation made no findings that were inconsistent with Captain Morales.

Third, "The failure of the NYPD to identify the officer who conducted the canvass for video." This assertion is insufficient to allow a reasonable juror to believe this conduct was part of an inferred conspiracy.

Fourth, "The discrepancy as to whether Jacobs had his off-duty weapon on his person." The court found this assertion actually cuts against a conspiracy as it suggests an absence of coordination.

Moreover, the presence or absence of Jacobs off-duty weapon is irrelevant to any claims as to "color of law" or "false arrest." Cooper made no allegations as to Jacobs displaying a weapon. Cooper when he made his initial false robbery report to the 911 operation never mentioned any handgun being in the possession of Jacobs or O'Connor nor did he make any representation as to a weapon being involved when the responding officers arrived, and Cooper entered their police car.

Fifth, "Cooper suggested the officers attempted to downplay his injuries as they did not want to attribute them to Jacobs". Again the court found as it did above Coopers injuries were documented and were included with the arrest reports

31

associated with O'Connor arrest for his assault of Cooper. While even if the refusal of the officers to take a photograph of Cooper's black eye were correct it fails to explain how this fact supports the inference that the Defendant-Appellees conspired to fabricate evidence.

In conclusion the court below found Cooper offered little more than speculation to support his claim of a conspiracy to fabricate evidence and the court found all defendants were entitled to summary judgment. (*Id*. *17-21)

The decision to grant summary judgment should not be disturbed. The court below clearly did not abuse its discretion in granting the motion and finding insufficient evidence of a conspiracy.

## POINT III

## THE COURT BELOW WAS CORRECT IN DECLINING TO EXERCISE PENDENT JURISDICTION OVER THE REMAINING STATE LAW CLAIMS

The District Court in Cooper III declined to retain jurisdiction over Coopers state-law claims due to all of Cooper's federal claims having failed. The court below found that it was not inconvenient, unfair, or uneconomical for the parties to try their state-law claims in state court. (Pension Benefit Guar. Corp.) v. *Morgan Stanley Inv. Mgmt. Inc.* 712 F. 3d 705, 727 (2d Cir. 2013).

The court below correctly dismissed Cooper's federal claims, and declined to exercise supplemental jurisdiction over the plaintiff's state law claims for assault and battery regarding the March 20, 2016 incident.

## CONCLUSION

For all the foregoing reasons, the decisions and orders of the district courts below, should be affirmed as to Defendant-Appellee Jacobs. There was no abuse of discretion or misinterpretation or misapplication of the law when the court in Cooper II refused to allow the amendment of the Second Amended Complaint to include a claim of false arrest as to Jacobs. The courts finding was correct that the PSAC contained no facts that Jacobs participated in the arrest of Cooper.

In Cooper III, the court below did not abuse its discretion in finding there was no genuine dispute as to any material fact concerning Jacobs being involved in a conspiracy to falsely arrest Cooper.

<div style="margin-left: 50%;">

*/s/ James M. Moschella*
JAMES M. MOSCHELLA
KARASYK & MOSCHELLA, LLP
*Attorneys for Defendant-Appellee*
*Police Lieutenant Thomas Jacobs*
233 Broadway, Suite 2340
New York, New York 10279
(212) 233-3800

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 7,686 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Time New Roman.

DATED:     May 17, 2023